# Lectro Management, Inc. v. Freeman, Everett & Company, Inc.

[373 A.2d 544]

No. 179-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed April 5, 1977

214

*Ralph Chapman,* Brattleboro, for Plaintiff.

*McCarty & Rifkin,* Brattleboro, for Defendant.

**Barney, C.J.** The plaintiff claims to have leased a certain piece of complex office equipment to the defendant and seeks to recover a balance due under the lease. The machinery was not manufactured by the plaintiff, but by a certain Randomatic Corporation. The plaintiff's assets have apparently now been assigned for the benefit of creditors.

The defendant advances several grounds in defense, and seeks to establish that the remedies it has for the failure of the machine to function are available against the plaintiff. It claims that the salesman who procured the arrangement was not only an agent of Randomatic, but of the plaintiff as well. The defendant also attacks the lease as actually a conditional sales contract containing improper and ineffective disclaimers of responsibility under the law by the plaintiff.

The lower court made findings and gave its conclusions of law. Based on all of these, it denied recovery to the plaintiff and denied the defendant's counterclaim, on the basis that the defendant had properly exercised its right of rescission. It also found an agency relation between the plaintiff and the Randomatic salesman.

The history begins with a contact by the salesman with the defendant. He interested the officers of the defendant real estate company in the machine in question. A down payment of $441.00 was obtained. It then developed that the machine was so

expensive that the defendant was not able to purchase it outright.

The salesman then informed the officers of the defendant that they were in danger of losing the deposit if the purchase did not go through. He produced forms supplied him by the plaintiff and stated that the matter could be handled by a lease arrangement through the plaintiff, a corporation in the business of financing such lease agreements. The lease provided for sixty monthly payments of $147.00, with a ten per cent purchase option, amounting to $612.50, at the end of the lease. The lease payments came to more than $9,000.00 for the term.

The lease contained clauses of disclaimer relating to any claims of improper installation or operations, breach of warranty, unsuitability and the like, specifically rejecting any responsibility for any representations concerning the machine. It provided, by its terms, that it assigned to the defendant any claims it may have had for any breach of warranties or representations relating to the machine against the manufacturer. The lease stated that as to the plaintiff, the defendant leased the machine "as is".

The plaintiff purchased the equipment from the manufacturer for $6,125.00, and had it delivered to the defendant. The plaintiff does not manufacture, sell or service any of the property it leases. It has no stock in trade. From the time of delivery the defendant had difficulty in operating the machine which was supposed to match properties with potential buyers and sellers of real estate and which constantly broke down. Although the salesman had promised to return to show defendant's employees how to operate the machine, he never did so.

After many complaints to the plaintiff about the equipment, the defendant called upon the plaintiff to take the machine back, and notified it of the defendant's intention to rescind the agreement. At that time, the defendant had paid twelve monthly installments, plus the original deposit and some other costs, the total payment amounting to $2,257.92, and leaving an unpaid balance on the contract of $6,826.68. Having received defendant's notice, the plaintiff responded by refusing to take back the equipment, and declaring the total balance then due under the lease as immediately due and owing, as provided by a term of the lease. The trial court found that the plaintiff made no effort to minimize any damage it may have suffered.

The plaintiff attacks the determination of the trial court that the Randomatic salesman was an agent of the plaintiff. It further goes on to point out that there is a specific disclaimer in the lease, as agreed to by thè defendant, that no "agent of the Seller is an agent of the Lessor (*i.e.* the plaintiff) or is authorized to waive or alter any term or condition of this lease".

If this provision is a valid and effective term of the agreement, the question of whether or not the salesman was an agent for the plaintiff as well as for the manufacturer is not of consequence in the disposition of the case. The available defenses of the defendant are also dependent on the effectiveness of the disclaimers as to merchantability and fitness included in the agreement.

■ The law does not favor such disclaimers, very likely because they so often play a part in fraudulent or unconscionable transactions. With respect to consumer fraud, such provisions are unenforceable under the Uniform Commercial Code, 9A V.S.A. § 2-316. But the application of this restriction is limited to the sale of new or unused consumer goods and was not effective until July of 1972 when new subdivision (5) was passed.

■■ Thus the other provisions of 9A V.S.A. § 2-316 govern. This statute requires that any language intended to exclude or modify any implied warranty of merchantability or fitness, to be effective, must mention "merchantability", and, to affect "fitness", must be in writing and conspicuous. It does say that an implied warranty of fitness can be excluded by the expression "as is", calling the buyer's attention to the exclusion of warranties and making plain that there is no implied warranty. The written agreement in this case fulfills all of these requirements and is, therefore, enforceable accordingly.

■ This instrument is denominated a lease by the plaintiff, but there is no doubt but what, under the Uniform Commercial Code, it is more accurately a secured transaction under the provisions of 9A V.S.A. § 1-201(37). That section provides that a lease giving the lessee the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. This subjects the transaction to the "Secured Transactions" provisions of 9A V.S.A. Art. 9. In effect, the contract is viewed

like a conditional sales contract. Thus, the lessee, here the defendant, is more accurately viewed as a "buyer".

Under 9A V.S.A. § 2-202, the written agreement intended as a final expression of the agreement between the parties may not be contradicted by any prior agreement or contemporaneous oral agreement. It may be supplemented in certain ways, including evidence of consistent additional terms and the course of dealing carried on between the parties. The defendant has advanced the claim that there was an agreement that payments under the contract would not start until the salesman returned to demonstrate the operation of the machine. He did not ever do so, but the defendant made fifteen monthly payments without it. Thus, defendant's contention that that promise of the salesman was a part of the agreement between the plaintiff and the defendant is undercut by its own performance. See 9A V.S.A. § 2-208.

In such a situation, the judgment of the lower court permitting rescission has no support and must be reversed. The cause will be returned for the entry of judgment in accordance with the law found to be applicable herein and for the computation of appropriate damages.

*Reversed and remanded for further proceedings not inconsistent with the views expressed in the opinion.*